DONALDSON, Judge.
Melissa Berg appeals from a summary judgment in favor of Than Nguyen and Myanh Nguyen. The Nguyens leased property to a tenant. Berg was injured by a dog owned by the tenant, but Berg was not on the leased property at the time of the injury. Berg sued the Nguyeps, as landlords of the tenant. We affirm the summary judgment in favor of the Ngu-yens.

Facts and Procedural Histo't'y

, The Nguyens owned rental property (“the rental property”) in Madison County that was located adjacent to a retail store. In September 2009, the Nguyens leased the rental property to Joseph Sanchez. Sanchez owned six, or seven pit-bull dogs, and, as a part of the rental agreement, he paid the Nguyens a pet deposit to provide compensation to the Nguyens for damages to the rental property caused by the dogs. Sanchez constructed chain-link kennels on the rental property to house some of the dogs, but he allowed other dogs to remain outside in the fenced backyard. Sanchez also chained the dogs in the front yard of the rental property. The Nguyens owned a convenience store located 100 to 200 feet from the rental property. The Nguyens viewed the rental property frequently, largely due to its close proximity to their convenience store, and they were aware of the dogs on the rental property.
On November 4, 2012, Berg parked her automobile in the parking lot of the retail store adjacent to the rental property. When she'got out of her automobile to enter the store to shop, Berg noticed two dogs in the parking lot of the retail store. Berg attempted to “shoo” them away. When she turned to enter the store, one of the dogs knocked her down, bit her left leg near her calf, and dragged her into the grass. A bystander intervened and took Berg to safety. Berg’s injuries required 19-20 stitches, and she eventually had surgery on her left knee.
According to deposition testimony, the Madison County Animal Control Department (“MCAC”) had received numerous complaints before the date of Berg’s injury relating to Sanchez’s pit-bull dogs, including allegations of mistreatment, reports of the dogs being off the rental property, and reports of the dogs biting other individuals. According to one report made the week before Berg was bitten, one of Sanchez’s other dogs bit a deputy employed by the Madison County Sheriffs Department. *1187 The Nguyens were aware that MCAC had been involved with Sanchez and his dogs.
On November 11, 2013, Berg filed a complaint against the Nguyens, Sanchez, and Pine Grove Enterprises, Inc. (“PGE”), a business operated by the Nguyens, asserting claims of negligence and wantonness. Berg alleged that the Nguyens “had a duty to exercise reasonable care to not allow large, vicious, and dangerous dogs to be kept on [the rental] property and/or maintain the rental property in süch a manner as to safely contain large, vicious, and dangerous dogs.” Berg alleged that the Nguyens had breached this duty and that, as a result, Berg suffered severe bodily injury, permanent scars and disfigurement, and mental anguish, and had incurred lost wages, and past and future medical expenses. In support of her wantonness claim, Berg alleged that the Ngu-yens had the “duty to exercise reasonable care not to allow large, vicious, and dangerous dogs to be kept on [the rental] property and/or maintain the [rental] property in such a manner as to safely contain large, vicious, and dangerous dogs.” Berg asserted that the Nguyens recklessly, or with conscious disregard for the rights of others, breached that duty.
On March 24, 2015, the Nguyens and PGE filed a motion for a summary judgment asserting that, as a matter of law, the Nguyens and PGE did not owe a duty of care to Berg to prevent the actions of Sanchez’s dog that occurred on a third party’s property. In support of their summary-judgment motion, the Nguyens and PGE attached excerpts from the deposition testimony of Sanchez, Than Nguyen, and Berg; the Nguyens’ responses to interrogatory requests; and other documents. On April 14, 2015, Berg filed her response to the summary-judgment motion and asserted that the Nguyens knew that Sanchez’s dogs were dangerous and that they had a duty and the authority to remove the dogs from the rental property. Berg attached to her response excerpts from her deposition and the depositions of the Nguyens and Sanchez, interrogatory responses, an “Incident and Offense Report” prepared by a deputy of the Madison County Sheriffs Department, and other documents.
Following a hearing, the trial court entered a summary judgment on May 1, 2015, in favor of the Nguyens, stating, in part, as follows:
“[T]he Court finds that Alabama case law does not provide for landlord liability in the context of this case, particularly since the Plaintiff has no relationship with either the tenant or landlord at issue and she was injured on another third party’s property. See Gentle v. Pine Valley Apartments, 631 So.2d 928 (Ala.1994), and Scott v. Donkel, 671 So.2d 741 (Ala.Civ.App.1995).”
Berg filed a notice of appeal to our supreme court on June 4, 2015. The supreme court transferred the appeal to this court pursuant to § 12⅛-7(6), Ala.Code 1975.[1]

Standard of Review

■ “This Court’s review of a summary judgment is de novo. Williams v. State *1188 Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically,'we must determine whether the movant has made a prima facie showing that no genuine issue of material fact- exists and that the movant is entitled to a judgment as- a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of-a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala. Code 1975, § 12-21-12. ‘[Substantial evidence is evidence of such weight and quality- that fair-minded persons in the exercise , of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala.1989).”
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004).

Discussion

“The elements of a negligence claim are a duty, a breach of that duty, causation, and damage.” Armstrong Bus. Servs., Inc. v. AmSouth Bank, 817 So.2d 665, 679 (Ala.2001). “[T]he existence of a duty is a question of law to be determined by the trial judge. Simply stated, the question of duty is a judgment whether the law will impose responsibility on a party for its conduct toward another.” State Farm Fire & Cas. Co. v. Owen, 729 So.2d 834, 839 (Ala.1998). “‘Where the facts upon which the existence of a duty depends, are disputed, the factual dispute is for resolution by the jury.’” Alabama Power Co. v. Brooks, 479 So.2d 1169, 1175 (Ala.1985) (quoting Alabama Power Co. v. Alexander, 370 So.2d 252, 254 (Ala.1979)). “Conversely, when the facts upon which the existence of a duty depends are not genuinely disputed, the task remaining is simply for the court to determine whether the alleged duty arises from those facts.” Ex parte BASF Constr. Chems., LLC, 153 So.3d 793, 804 (Ala.2013).
On appeal, Berg contends that the trial court erred in entering a summary judgment in favor of the Nguyens because, she asserts, as landlords of the rental property, the Nguyens had the authority and the duty to remove the dogs from the rental property to prevent her injury. Berg also asserts that the Nguyens knew of the dangerous nature of Sanchez’s dogs and knew that the dogs had gotten out of their kennels before the incident in which she was injured occurred. The Nguyens contend that they owed no duty to Berg because they did not own the dog that attacked her, they did not retain control over the rental property, and the injury did not occur on the rental property.
Although it does not appear that an Alabama court has directly addressed the duty of a landlord to prevent an injury to a person who is injured while not on the leased premises by a dog owned by a tenant, certain cases are helpful in the review of the question presented by this case.
In Humphries v. Rice, 600 So.2d 975 (Ala.1992), the plaintiff was injured by a dog that was owned by the son of Hum-phries. The son lived in a separate residence on land owned by Humphries, and the injury occurred on that land. Our supreme court held that, “[i]n order for *1189 [Humphries] to be liable under the theory of common law negligence, [Humphries] not only must have known of the: vicious propensities of the dogi but also must be considered the owner or keeper of the dog in question.” 600 So.2d at 977. The court further held that “an owner or keeper of an animal [is] charged with knowledge of the propensities of the breed of animal he or she owns.” Id. at 978.
Two years later, in Gentle v. Pine Valley Apartments, 631 So.2d 928 (Ala.1994), our supreme court addressed a landlord’s duty to use reasonable care' to protect tenants from dog attacks in the common areas of leased premises. Thát court determined that
“the presence of a tenant’s vicious dog in areas shared by other tenants constitutes a ‘dangerous condition’ and 'that a landlord must exercise reasonable care to prevent injuries from such a dangerous condition. In so' holding, we do no more than apply ordinary negligence principles, analogizing this particular condition to a variety of comparable dangers traditionally triggering the duty of ■due care.”
631 So.2d at 934. In Gentle, the court specifically stated that its holding did not “determine the extent to which a landlord ... may be liable for harm caused by a dog on the ...' premises of third parties.” Id. at 934. It is undisputed that Berg’s injuries were sustained on the property of a third party and not in a common area of the rental property owned by the Ngu-yens; therefore, Gentle does not establish a duty on the Nguyens that extends beyond the leased property.
Most recently, in Scott v. Donkel, 671 So.2d 741 (Ala.Civ.App.1996), this court held that a landlord was not liable for injuries sustained by a nontenant during an attack by a tenant’s dog while the non-tenant was walking down the public street in front of the leased premises. The court in Scott noted that “[o]ur Supreme Court has stated that ‘notice to the premises owner, whether direct or imputed, of the dangerous condition is the sine qua non of liability.’ ” 671 So.2d at 744 (quoting Gentle, 631 So.2d at 935). This court affirmed the trial court’s summary judgment in favor of the landlord because, this court held, the plaintiff had failed to present substantial evidence showing that the landlord knew that the dog had dangerous propensities or that the dog had previously attacked anyone. Id. at 744.
Berg cites to similar cases in other jurisdictions in support of her claims against the Nguyens. One such case, Park v. Hoffard, 315 Or. 624, 847 P.2d 852 (1993), is factually similar to this case. In Park, a child was bitten by a tenant’s dog while playing in a parking lot adjacent to the leased premises. 315 Or. at 627, 847 P.2d at 852-53. There was evidence that the landlord was award that the tenant’s dog had previously bitten another person and knew that there was a warning sign on the leased premises indicating that there was a dangerous dog on the premises. 315 Or. at 632, 847 P.2d at 856. The trial court entered a summary judgment in favor of the landlord, concluding that the landlord owed no duty to third persons for injuries caused by a tenant’s animal off the leased premises. 315 Or. at 627, 847 P.2d at 853. The Court of Appeals of Oregon reversed the summary judgment, holding that “ ‘[a] trier of fact could find that [the landlord] knew of the dog’s dangerous propensities, had sufficient control over the harboring of the dog and would not have expected [the tenant] to take necessary precautions voluntarily and, therefore, that [the landlord’s]" failure to act was unreasonable.’ ” 315 Or. at 628, 847 P.2d at 853. The Oregon Supreme Court affirmed the lower appellate court’s decision. The Oregon *1190 Supreme Court adopted the Restatement (Second) of Torts § 379A (1965), which provides:
“A lessor of land is subject to liability for physical harm to persons outside of the land caused by activities of the lessee or others on the land after the lessor transfers possession if, but only if,
“(a) the lessor at the time of the lease consented to such activity or knew that it would be carried on, and
“(b) the lessor knew or had reason to know that it would unavoidably involve such an unreasonable risk, or that special precautions necessary to safety would not be taken.”
As the Park court noted, pursuant to Comment a to Section 379A, this rule is to be construed in conjunction with Section 837 and its Comments, which provide, in pertinent part:
“(1) A lessor of land is subject to liability for a nuisance caused by an activity carried on upon the land while the lease continues and the lessor continues as owner, if the lessor would be liable if he had carried on the activity himself, and
“(a) at the time of the lease the lessor consents to the activity or knows or has reason to know that it will be carried on....

a

“[Comment] g. Lease renewed, If at the time that the lessor renews the lease he knows that activities are being carried on or that physical conditions have been created upon the leased land that are causing an unreasonable interference with the use and enjoyment of another’s land, he is liable for the continuance of the interference after the renewal.”
Restatement (Second) of Torts § 837 (1979).
. Berg does not expressly ask us to adopt the Restatement approach. We note, however, that under .the Restatement, the landlord must consent to the activity that caused the injury or must have actual or constructive knowledge of the activity as one of the elements to establish liability. This element of forseeability to establish a duty is consistent with the holdings in Humphries and Scott.
The Nguyens presented evidence in support of their motion for a summary judgment indicating that they did not know of the dangerous, propensities of the dog that injured Berg. In their deposition testimony, the Nguyens and Sanchez testified that the Nguyens did not know the dog had ever attacked anyone and that the Ngu-yens were aware of only two occasions when MCAC had been called to the rental property. Than Nguyen also testified that he was. aware of only a few occasions when the dogs were unchained and in the front yard and.that he was not aware that any dog owned by. Sanchez had ever left the rental property.
Once the Nguyens made a prima facie showing that no genuine issue of material fact existed as to their liability, the burden shifted to Berg to present substantial evidence that the Nguyens knew or should have known of the dog’s dangerous propensities. Although it is undisputed that the-Nguyens knew that Sanchez had dogs on the rental property and that some type of report about the dogs had been made to MCAC, there was no substantial evidence submitted to support Berg’s, contention that the Nguyens knew or should have known of any dangerous propensities of the dog in question, i.e., that the Nguyens had actual or constructive notice that the dog was a “dangerous condition.” Scott v. Donkel, 671 So.2d at 744.
Berg argues that the evidence submitted in opposition to the summary-judgment *1191 motion showed that the Nguyens had obtained insurance for the rental property and that the insurance carrier for the rental property had issued an exclusion from coverage for injuries or damage caused by a vicious breed of dog or dog with a previous attack history, which specifically included pit-bull dogs. Than Nguyen denied that he was aware of the exclusion but admitted that he had not read the policy. Than Nguyen also admitted in his deposition that he believed insurance carriers exclude coverage for pit-bull dogs because of the “danger” those dogs pose, and Myanh Nguyen testified that she knew that pit-bull dogs are a dangerous breed. However, a landlord is not deemed to have knowledge of the propensities of his tenant’s dog based on the breed alone. See Humphries v. Rice, 600 So.2d at 978 (holding that, although evidence had been offered concerning the propensities of the dog breed, the evidence failed to establish that the specific dog in question had a propensity to attack humans and concluding that “an oumer or keeper of an animal will be charged with knowledge of the propensities of the breed of animal he or she owns” (emphasis added)). In short, Berg did not present substantial evidence indicating that the Nguyens had actual or constructive notice that the dog ' that caused Berg’s injuries presented a danger to persons outside the property, e.g., persons shopping at the adjacent retail store. Thus, the facts concerning the existence of a duty on the part of the Nguyens to prevent injury to Berg occurring outside the rental property were not in dispute, and the Nguyens were entitled to a judgment as a matter of law.

Conclusion

For the foregoing reasons, the trial court’s summary judgment is due to be affirmed.
AFFIRMED.
PITTMAN, THOMAS, and MOORE, JJ., concur.
THOMPSON, P.J., concurs in the result, without writing.

. Berg stipulated to the entry of a summary judgment in favor of PGE, and the claims against Sanchez remained pending. On October 6, 2015, Berg filed a motion to remand this matter to the trial court for it to enter an order certifying the summary judgment as a final judgment, pursuant to Rule 54(b), Ala. R. Civ. P. On October 14, 2015, this court granted Berg's motion and reinvested the trial court with jurisdiction to consider whether Rule 54(b) certification of the summary judgment was appropriate. The trial court entered an order certifying the summary-judgment order as final on October 16, 2015. Accordingly, only the summary judgment entered in favor of the Nguyens is before us on appeal.